[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This limited contested dissolution of marriage action was brought to the Judicial District of New Haven by summons dated August 10, 1999 with a return date of September 7, 1999. The complaint alleges that the parties were married in Flagstaff, Arizona on October 31, 1994. The complaint further alleges that the parties have resided in the State of Connecticut for at least one year prior to the date of the filing, that no minor children were born to the wife since the date of the marriage, that there has been no receipt by either party of financial assistance and that the marriage of the parties has broken down irretrievably. The allegations of the complaint are found to have been proven and the marriage of the parties was dissolved on September 20, 2000 and the plaintiff's maiden. name of Jean Arthur was restored to her. The court reserved jurisdiction to render its decision containing findings of facts and orders.
The plaintiff, Jean Bernardo, is 57 years of age and is in reasonably good health. She had 26 counseling session with Thomas Campbell, L.C.S.W., that began in August of 1999. Mr. Campbell testified that Mrs. Bernardo progressed well and that her prognosis is excellent. The plaintiff has a Bachelor of Liberal Science Degree and is presently employed as a "casual" computer programmer earning $21 per hour at a job where she works 37.5 hours per week. She has worked in similar jobs prior to and throughout the marriage of the parties. The court finds that she has a earning capacity of approximately $40,000 per year.
The plaintiff owns real estate located at 23 Wallace Road, Stony Creek in Branford, Connecticut. She owned this property with her first husband and received sole ownership in connection with the dissolution of her first marriage. The assessed value of the property is $119,000 and the court finds that its market value is $170,000. The plaintiff has IRA's CT Page 11849 and 401k's that she has accumulated over her work history in the total amount of $97,926.
The defendant is 56 years of age, enjoys reasonably good health and is a high school graduate. He attended college for approximately two years, but did not obtain a degree. He was employed by Southern New England Telephone Company from 1965 to 1978 and he is entitled to receive a pension in the amount of $270 per month when he reaches age 65. The defendant was employed in various jobs as a computer program and he worked up until 1992 when he was making approximately $40,000 per year. In 1992 he asked his employer to work on a part-time rather than full-time basis. The employer would not agree and he was terminated. The defendant has not worked since 1992. The court finds his earning capacity, based upon his prior earnings, to be $40,000 per year.
The defendant did not work during the marriage. The couple separated in September of 1999 and since the separation, the defendant has not worked. The defendant admits that since the separation he has not made any attempts to seek employment. The defendant describes himself as "retired."
In 1992 the defendant received approximately $400,000 from the estate of his mother. In 1997 he received approximately $80,000 from the sale of his late father's home.
With a portion of these inheritances the defendant purchased six automobiles which are presently in the possession of the parties. Because they compromise a substantial portion of the marital estate the court will list each vehicle, title ownership, usual operator, purchase price and present value and approximate purchase date, as stated by the defendant.
 Vehicle Title/Usual Purch. Price Present Approx. Purch Operator Value Date
1999 Mercedes Husband/Husband $44,400 $33,550 June 1999 1998 Mercedes SLK Joint/not in use $42,000 $31,490 January 1998 1998 Honda Joint/Wife $14,000 $10,650 November 1997 1997 Acura Joint/Husband $24,000 $14,885 February 1997 1995 Mercedes Joint/Wife $38,000 $19,325 1995 1992 Mercedes Husband/Husband $40,000 $13,580 December 1991
The plaintiff testified that the 1995 Mercedes Benz was a 1995 Christmas gift to her from her husband. The defendant testified that he gave the plaintiff the "gift of use" of the car. CT Page 11850
Although he spent considerable sums on automobiles, the defendant did have a frugal side. He installed a fuel oil tank in the garage at 23 Wallace Road to fuel his diesel automobiles and store heating oil for the home when the price was low.
In addition to the automobiles, the defendant's financial affidavit dated September 5, 2000 shows the following: Bank accounts totaling $7,810; stocks, bonds and mutual funds shown on Schedule A in the total amount of $157,360. The most recent Tucker Anthony statement shows an increase of approximately $5,500 over the amount stated on the defendant's affidavit. The defendant has an IRA in the amount of $29,465. Also shown on the defendant's affidavit under "all other assets" are accounts receivable totaling $53,877. These accounts represent loans that the defendant has made to various individuals upon which he charges interest. These accounts show one receivable from the plaintiff in the amount of $12,762 which will be discussed below.
Further discussion of the defendant's inheritances are warranted. It appears that substantial amounts of money from the inheritances were placed in various bank accounts and brokerage accounts opened by the defendant prior to the marriage and during the marriage. Several of these accounts were in joint names with the plaintiff. The plaintiff acknowledged that she did not contribute any money to these joint accounts. These accounts were exclusively controlled by the defendant. In some cases, money was withdrawn from the joint accounts to purchase the automobiles. The court finds that the funds in the joint accounts devolved from inheritances that the defendant received from his parents.
From the evidence it appears that the defendant made certain payments on behalf of the plaintiff as follows: $22,500 on August 1, 1994 to the plaintiff's ex-husband, also on August 1, 1994 $1,800 for attorney's fees in connection with the plaintiffs divorce, on September 26, 1994 $4,026 to payoff the balance on the mortgage of 23 Wallace Road, on November 11, 1994 $5,252 to payoff the plaintiffs outstanding credit card balance. The first three payments preceded the marriage and the last payment was made right after the marriage. The defendant testified these payments were in the form of a loan to the plaintiff upon which he charged 4% interest. He also testified that he gave the plaintiff credit for his portion of the living expenses for 23 Wallace Road in the amount of $725 per month. In his financial affidavit the defendant shows on Schedule 4H an account receivable from the plaintiff in the amount of $12,762 which he claims to be the amount due on the loan he made to the plaintiff after application of the credit for his portion of the living expenses. When questioned by the court, the defendant stated that he did not have any writing evidencing the "loan" he made to the plaintiff. CT Page 11851
The plaintiff testified that the payments were not a loan to her. She also testified that the first time that she heard that the defendant considered the payments a loan, was at the defendant's deposition. On this matter, the court does not find the testimony of the defendant credible and finds that the stated payments made on behalf of the plaintiff were not a loan to the plaintiff.
During the course of the marriage, the parties kept their respective financial matters separate from the other. The general practice was for the defendant to pay for the taxes and insurance associated with the vehicles and the plaintiff would be responsible for the payment of the household expenses. The party split the costs of vacations.
The plaintiff understood and accepted that she would work during the marriage while her husband would stay home and tend to his investments. It was the plaintiff's further understanding that this arrangement would last until such time as her children were out of college, at which time she would stop work and retire along with her husband. The plaintiff believed she would stop working in March of 2000, when she concluded a' durational position.
Both parties testified differently on the cause of the breakdown of the marriage. The plaintiff claims the problems began in 1998 when her husband began to ask her to contribute towards the expenses of the automobiles. The plaintiff became concerned when the defendant stated that he wanted to cut expenses by giving away the couple's: automobiles to various relatives. His theory was that the couple would shed the expenses of the automobiles, but would still have control of them as an asset. The defendant, without the plaintiffs knowledge, transferred the 1995 Mercedes that the plaintiff drove to the plaintiffs son in June of 1998. When the plaintiff found out about this transfer, an argument ensued and the defendant spent the night away from the home. The 1995 Mercedes was subsequently transferred from the plaintiffs son back to the parties in joint ownership in September of 1998. After this argument in June of 1998, the defendant transferred money which was in the joint accounts, into accounts in his name alone. As a further cause of the breakdown the plaintiff testified that the defendant embarrassed her in front of her friends and mocked her in public.
The defendant also points to the argument in June of 1998 as a significant event. He testified that he believed his wife was dissatisfied with the state of their finances. He was also surprised at her reaction to his plan to reduce expenses by putting the automobiles in the names of relatives. When he realized how much the plaintiff was upset by the transfer of her Mercedes to her son the defendant reversed the transaction. The defendant also testified that he believed that the CT Page 11852 plaintiff's menopause, and the medication she was taking for it, caused substantial changes in her personality so that she became "unrecognizable."
Considering all of the evidence, the court finds that the defendant's actions precipitated the breakdown of the marriage.
The court finds that the defendant violated the automatic orders in effect when, after October 25, 1999, he removed approximately $75,000 from the Tucker Anthony account. The defendant did place approximately $50,000 of this sum in his Ameritrade account, however the balance of approximately $25,000 was used by the defendant.
The court has considered the relevant statutory criteria, including C.G.S. § 46b-81, the evidence, and arguments presented by both parties. Based on the foregoing, the following orders are entered:
(1) Property Settlement. By way of property settlement, the defendant is to pay the plaintiff the sum of $25,000 within sixty (60) days from the date of the filing of this memorandum;
(2) Automobiles. The defendant shall transfer his interest in the 1998 Honda and the 1995 Mercedes Benz to the plaintiff. The plaintiff shall transfer her interests in the 1998 Mercedes Benz and the 1997 Acura to the defendant;
(3) Personal Property. The plaintiff may retain the John Deere lawnmower, the defendant shall receive the Gateway 486 tower computer;
(4) Parties Assets and Liabilities. Subject to the provisions of the foregoing orders, each party shall retain the assets listed on their respective financial affidavits with the proviso that the defendant is not entitled to payment of the accounts receivable in the name of Jean Bernardo, in the amount of $12,762 listed in Schedule 4H of his financial affidavit. The plaintiff is not given an equitable interest in the husband's assets as stated in Section 4C of her affidavit;
(5) Personal Property. Subject to the foregoing, each party shall retain the personal property they presently have in their possession;
(6) Oil tank. The defendant is ordered to remove the above ground oil tank located in the garage at 23 Wallace Road, Branford, Connecticut at his expense within sixty (60) days from the date of the filing of this memorandum;
(7) Health Insurance. Each party shall pay for his or her own health CT Page 11853 insurance. The defendant is permitted to continue any COBRA benefits available through the plaintiffs health insurance at his expense;
(8) Attorney's fees. The defendant is to pay counsel fees to the plaintiffs attorney in the amount of $2,500 within sixty (60) days from the date of the filing of this memorandum of decision;
(9) Alimony. Neither party is awarded alimony.
Domnarski, J.